IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Ronald I. Paul,

Plaintiff,

v.

South Carolina Department of Transportation; Paul D. de Holczer, *individually and as a partner of the law Firm of Moses Koon & Brackett P.C.*; G. L. Buckles, *as Personal Representative of the Estate of Keith J. Buckles and G. L. Buckles*; Michael H. Quinn, *individually and as senior lawyer of Quinn Law Firm LLC*; J. Charles Ormond, Jr., *individually and as a partner of the Law Firm of Holler, Dennis, Corbett, Ormond, Plante & Garner*; Oscar K. Rucker, *in his individual capacity as Director, Rights of Way South Carolina Department of Transportation*; Macie M. Gresham, *in her individual capacity as Eastern Region Right of Way Program Manager, South Carolina Department of Transportation*; Natalie J. Moore, *in her individual capacity as Assistant Chief Counsel, South Carolina Department of Transportation*,

Defendants.

C/A No. 3:13-367-CMC-PJG

**REPORT AND RECOMMENDATION**

The plaintiff, Ronald I. Paul ("Paul"), a self-represented litigant, filed this action alleging claims of civil conspiracy under 42 U.S.C. § 1983 and state law. This matter stems from a state condemnation of land leased by Paul. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. Having reviewed



PJG

the Complaint in accordance with applicable law, the court concludes that it should be summarily dismissed.

## BACKGROUND

The allegations in this action are almost identical to those raised by Paul in Civil Action No. 3:12-1036-CMC-PJG, which was dismissed without prejudice for failure to state a claim.[1] As explained in the previous matter, Paul's claims arise out of the 2002 condemnation of land that Paul was renting and the subsequent litigation. Paul filed this action against the above defendants alleging six separate claims of conspiracy based on the defendants' involvement in the condemnation litigation. Paul describes the defendants as follows: South Carolina Department of Transportation ("SCDOT"); Defendant Rucker (individually, as Director of Rights of Way, SCDOT); Defendant Gresham (individually, as the Eastern Region Right of Way Program Manager, SCDOT); Defendant Moore (individually, as Assistant Chief Counsel, SCDOT); Defendant de Holczer (individually, and as a partner of the law firm of Moses, Koon & Brackett, P.C.); Defendant Buckles (individually, and as personal representative of the Estate of Keith J. Buckles); Defendant Quinn (individually, and as senior lawyer for Quinn Law Firm, LLC); and Defendant Ormond (individually, and as a partner of Holler, Dennis, Corbett, Ormond, Plante & Garner).

Paul alleges that he began leasing the property located at 2115 Two Notch Rd. in 1985 from Keith J. Buckles, who is now deceased. Upon leasing the property, Paul

[1] A court may take judicial notice of its own books and records. Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.' ") (citation omitted).





opened a retail liquor store. Paul asserts that in 2002, Defendant Rucker requested via letters that Paul vacate the property. Later that year, Defendants SCDOT, de Holczer, Rucker, Gresham, and Moore, filed an action pursuant to the South Carolina Eminent Domain Procedures Act against Keith J. Buckles and Defendant Buckles, and amended that action to include Paul. Paul alleges that he filed a counterclaim asserting an inverse condemnation claim in violation of his rights under the Fifth and Fourteenth Amendments. In 2003, Paul asserts that Defendant Gresham inspected the property and had Paul evicted by court order without just compensation. Paul alleges that in 2004 Defendants Quinn and Buckles reached a settlement agreement with Defendants SCDOT, de Holczer, Rucker, Gresham, and Moore, which was approved by the Honorable James R. Barber, III on March 23, 2004. Paul states that he, via his attorney Defendant Ormond, rejected settlement offers. Paul alleges that he retained expert witnesses, which Defendants SCDOT, de Holczer, Rucker, Gresham, and Moore deposed, that valued his damages between $300,000 and $400,000. Paul argues that the commercial lease was part of the property as defined by South Carolina's eminent domain statute.

On March 11, 2005, the Honorable Reginald I. Lloyd determined and awarded Paul $2,450 for his leasehold interest in the property. (See C/A No. 2002-CP-40-4800.) Paul's appeals of this Order were rejected. On January 28, 2008, following a motion hearing, the court approved the disbursement of the condemnation proceeds. Paul's appeals of this Order were also rejected. Paul next filed a Rule 60(b)(4) motion for relief, which was denied, and a motion for reconsideration, which was denied. Paul's appeal of this Order was dismissed. In February 2008, Paul filed a civil action in state court (2008-CP-40-1259) alleging four causes of action for civil conspiracy against the same defendants named in





this action. That action was dismissed, in part based on a determination that the claims were time-barred under the applicable statute of limitations.

Paul then filed Civil Action No. 3:12-1036-CMC-PJG in this court, alleging the same six claims of civil conspiracy as asserted in this matter against the same defendants. As stated above, these claims were dismissed without prejudice for failure to state a claim. In comparing the facts and allegations raised in C/A No. 3:12-1036-CMC-PJG to those raised in the Complaint, Amended Complaint, and proposed Second Amended Complaint, it appears that Paul has made minor changes; however, the facts and allegations are substantially similar.

Now, in this action, Paul again claims that Defendants SCDOT, de Holczer, Quinn, Rucker, Gresham, Moore, Ormond, and Buckles conspired to deprive him of his constitutional and/or statutory right to a jury trial on his counterclaim in 2004. Paul also alleges that Defendants SCDOT, de Holczer, Quinn, Rucker, Gresham, Moore, Ormond, and Buckles conspired to intimidate and threaten his expert witnesses, including threatening criminal prosecution. It is not clear why he includes his attorney, Ormond, in this allegation; however, in the prior action Paul filed, he maintained that Ormond failed to object. Third, Paul alleges that these defendants conspired during Paul's trial to violate his constitutional rights. In this allegation, Paul appears to argue that the defendants presented issues that were not before the court, outside the court's jurisdiction, or were intended to mislead or defraud. Fourth, Paul alleges that Defendants Quinn, Buckles, SCDOT, Rucker, Gresham, Moore, Ormond, and de Holczer conspired to have the proceeds disbursed pursuant to the allegedly void judgment and attempted to mislead the court and validate this judgment during a 2008 motion hearing. Fifth, Paul alleges that in





2010 Defendants Quinn, Buckles, SCDOT, Rucker, Gresham, Moore, Ormond, and de Holczer conspired against Paul's rights by filing a motion for "contempt of court" in an attempt to enjoin Paul from filing further actions regarding this matter. Sixth, Paul alleges that in or about March 2004 through in or about July 2010 the defendants conspired to take Paul's property in violation of his rights under the Fifth and Fourteenth Amendments.

As part of his prayer for relief, Paul seeks declaratory judgments: that Paul and all the defendants except Ormond agreed to a settlement; that Paul's constitutional rights were violated; that the defendants conspired against Paul; that Defendants de Holczer, Buckles, Quinn, and Ormond are state actors; that evidence of Paul's damages be admitted; and that SCDOT offered no rebuttal evidence to dispute Paul's damages. Paul also requests that he be awarded the damages he sought in state court for 2115 Two Notch Rd., as well as damages for the loss of his property interest in 2318 Two Notch Rd., and that he be awarded punitive damages, fees, and expenses.

Paul also filed a fifty-page Amended Complaint on March 25, 2013 with 116 pages of Exhibits attached and a fifty-eight-page proposed Second Amended Complaint on April 15, 2013 with 154 pages of Exhibits attached.[2] The Amended Complaint and proposed Second Amended Complaint are substantially similar to, if not identical, in parts, to the original Complaint filed by the Plaintiff. In the Amended Complaint and proposed Second Amended Complaint, however, the Plaintiff claims that the defendants willfully acted under color of law to have a state court tribunal in an eminent domain case "issue a

[2] The Exhibits attached to Plaintiff's Amended Complaint and proposed Second Amended Complaint are documents which were filed in state court, and are now the subject of this suit, or, they are documents that were submitted in Plaintiff's prior action filed in this court.





predetermined unlawful order of judgment of a settlement," and obstruct and/or block Plaintiff's right to claim damages against the SCDOT. (Am. Compl., ECF No. 8 at 2.) Plaintiff believes these two "acts" were intended to "convert to SCDOT[,] property valued at $310,000.00 belonging to the Plaintiff, in violation of the fifth and fourteenth amendment[s] of the . . . Constitution." (Id. at 3.) Plaintiff maintains that the defendants either acted under color of state law, or jointly engaged with state officials in the challenged action, thereby also acting under color of state law. (Id. at 30-31.) He believes he is entitled to actual, consequential, and punitive damages. (Id. at 47.) He also reiterates the relief he requested in his original Complaint. (Id. at 48-50.)

Specifically in the Amended Complaint, Plaintiff alleges that the defendants "could only agree that a settlement was reached in March of 2004, for $ 156,750.00, between SCDOT and Buckles. Any actions or jointly [*sic*] statements beyond this indicating the **case settled**, was conspiracy against [Plaintiff's] rights to claim damages against [the SCDOT]." (Id. at 13) (emphasis in original). In support of this last allegation, Plaintiff refers to his Exhibits A, B, D, G, and E. Plaintiff alleges that in October of 2004, some of the defendants (SCDOT, Quinn/Buckles) "showed up at trial" with two expert witnesses, despite the fact that these defendants had settled their part of the case in March 2004, moving forward as if the Plaintiff had agreed with the $156,750.00 settlement in total disregard of Plaintiff's rights. Plaintiff claims this was a conspiracy. (Id. at 15.) Plaintiff complains about the defendants' motion for the state court to enter an order for the amount of their settlement, because Plaintiff apparently believed this was in contravention of what Plaintiff was entitled to—$310,000.00—which Plaintiff alleges had been "admitted into evidence by the trial judge." Plaintiff refers to his Exhibit B, page 32, lines 9-17 in support.





(Id. at 15-16.) Plaintiff further claims that there is no testimony or documents in the eminent domain case to establish that the fair market value of the land in question was $154,700.00. Plaintiff claims two other opinions of value were given but even these were, Plaintiff alleges, "fatally defective." (Id. at 21.)

Plaintiff states that "[o]n January 19, 2011, [t]he Court of Appeals issued an Order that dismissed [his] appeal and ignored the illegal injunctive and injunction relief motions and, on October 19, 2011, the Supreme Court denied Plaintiff['s] Petition for Writ of Certiorari." (Id. at 46.)

**INITIAL REVIEW GENERALLY**

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint. This court is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990);





see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Moreover, even when the filing fee is paid, the court possesses the inherent authority to dismiss frivolous complaints. See Ross v. Baron, No. 12-1272, 2012 WL 3590914, at *1 (4th Cir. Aug. 22, 2012); see also Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 307-08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). Because federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, a federal court is required *sua sponte* to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." Bulldog Trucking, Inc., 147 F.3d at 352; see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time





that it lacks subject-matter jurisdiction, the court must dismiss the action."). "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." Pinkley, Inc., 191 F.3d at 399. To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the Complaint provide "a short and plain statement of the grounds for the court's jurisdiction[.]" If, however, the Complaint does not contain "an affirmative pleading of a jurisdictional basis[,] a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." Id. Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). If the court, viewing the allegations in the light most favorable to Plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. Id.

If a plaintiff's complaint pleads a colorable claim arising under the Constitution or laws of the United States, he invokes federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[3] See Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452-53 (4th Cir. 2012). However, if the alleged federal claim is "'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy,'" then subject matter jurisdiction does not exist. Id. (citation omitted) (emphasis added).

---

[3] Diversity subject matter jurisdiction is not applicable to this case because the Complaint does not allege complete diversity of parties. See Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011); 28 U.S.C. § 1332.





## DISCUSSION

In this case, like the Plaintiff's previous case, Plaintiff has failed to state a plausible claim for relief. Although Plaintiff expressly references the Constitution and its Amendments, merely invoking the Constitution is insufficient when there are no facts alleged to support a federal claim. See Holloway, 669 F.3d at 452-53 (indicating that where the allegations are so lacking in specificity or are so insubstantial and conclusory, they do not involve a federal controversy). Section 1983 requires two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).

Additionally, " '[t]o establish a conspiracy under [42 U.S.C.] § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in [the] deprivation of a constitutional right.' " Glassman v. Arlington Cnty., Va, 628 F.3d 140 (4th Cir. 2010) (alterations in original) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). The plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. Further, the "[i]ndependent acts of two [or more] wrongdoers do not make a conspiracy." Murdaugh Volkswagon v. First Nat'l Bank, 639 F.2d 1073, 1075-76 (4th Cir. 1981). When a plaintiff makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, no claim will lie. See Woodrum v. Woodward Cnty., Okla., 866 F.2d 1121, 1126-27 (9th Cir. 1989); Ruttenberg v. Jones, 283 F. App'x 121, 131-32 (4th Cir. 2008).





Thus, a plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Twombly, 550 U.S. at 556-57. "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." A Society Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (citing Twombly, 550 U.S. at 557). As an initial matter then, liberally construed, Paul's Amended Complaint and proposed Second Amended Complaint contain only conclusory allegations of a conspiracy. His "formulaic recitation" of the elements of conspiracy is insufficient to state a plausible claim. Iqbal, 556 U.S. at 678.

**A. Defendants de Holczer, Buckles, Quinn, and Ormond**

Moreover, Defendants de Holczer, Buckles, Quinn, and Ormond are not state actors, and are not subject to suit under § 1983. Although a private individual who jointly participates in alleged constitutional wrongdoing with a state or local official may be said to have engaged in "state action" which meets the requirement of § 1983, Paul has failed to allege sufficient facts to demonstrate an agreement between these defendants and the state actors. See Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

Further, attorney Defendants de Holczer, Quinn, and Ormond, do not act "under color of state law" within the meaning of § 1983. Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981). "Although lawyers are generally licensed by the States, 'they are not officials of government by virtue of being lawyers.' " Id. at 319 n.9 (quoting In re Griffiths, 413 U.S. 717, 729 (1973)); see O'Bradovich v. Village of Tuckahoe, 325 F. Supp. 2d 413 (S.D.N.Y. 2004) ("No § 1983 action lies against a lawyer or law firm for representing public officials





and entities in lawsuits."); Raines v. Indianapolis Pub. Sch., 52 F. App'x 828, 830 (7th Cir. 2002) (affirming that a lawyer representing a school board in contract matters is not a state actor).

**B. Defendants SCDOT, Rucker, Gresham, and Moore**

Although Paul alleges that he is only suing Defendants Rucker, Gresham, and Moore in their individual capacities, he also explicitly alleges that he is suing them based on their respective positions with SCDOT. Rucker, Gresham, and Moore, in their official capacities, are immune from suit for monetary damages under § 1983. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, they are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. Will, 491 U.S. at 70-71; see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Although a State may waive sovereign immunity, Lapides v. Board of





Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, the SCDOT is immune from suit, and, to the extent that Defendants Rucker, Gresham, and Moore are sued in their official capacities, they are also immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

As for any individual liability on the part of Defendants Rucker, Gresham, and Moore, Paul failed to allege in his first Complaint filed with this Court that these defendants personally participated in the alleged violation of his rights. It was noted in the previous matter[4] that delegation of a person's authority is insufficient as the doctrine of respondeat superior cannot support liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). Paul was also told in the prior matter that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

Nonetheless, even considering the additional facts and allegations included in Paul's Amended Complaint and proposed Second Amended Complaint, the court finds that these Complaints continue to suffer from the same deficiencies as the Complaint and proposed Amended Complaints in Paul's prior action. Consequently, Paul has failed to state a plausible claim for relief.

---

[4] As noted previously, a Court may take judicial notice of its own books and records. Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").





## RECOMMENDATION

Based on the foregoing, the court recommends that the Complaint in the above-captioned case be dismissed without prejudice and without issuance and service of process. In light of this recommendation, the court further recommends that any pending motions (ECF No. 10) be terminated.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 8, 2013
Columbia, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).